### GEORGE BUTTERFIELD *vs*. INHABITANTS OF MELROSE.

Votes by the inhabitants of a town instructing their treasurer "to consolidate the town debt for ten years, provided the money can be obtained at five and a half per cent.," and authorizing him "to borrow such sums as shall be necessary for the use of the town, under the direction of the selectmen," and also "to borrow twenty-five thousand dollars of the Mount Vernon Bank, at five and one half per cent. interest, and that the same be appropriated under the direction of the selectmen to the liquidation of the present town debt," do not authorize the treasurer to employ a broker in their behalf to negotiate the loan, or render them liable to pay for the services of a broker employed by him to borrow the money for them.

CONTRACT brought by a broker to recover $300 for commission and services in negotiating a loan of $25,000 for the defendants.

At the trial in the superior court, before *Brigham*, J., it appeared that in the latter part of November 1860 the defendants received from the Mount Vernon Bank in Boston $25,000 as a loan on a term of years, and that the negotiation for the same extended over a month's time and was conducted through the plaintiff; that on the 6th of November the defendants passed the following vote: " Voted, that the treasurer be instructed to consolidate the town debt for ten years, including all that is now due, provided the money can be obtained at five and a half per cent., with the privilege of paying all or any part of said debt at any time;" that on the 22d of November they passed the following votes: " Voted to authorize the town treasurer to borrow such sums of money as shall be necessary for the use of

the town, under the direction of the selectmen, agreeable to the petition of Caleb ·Howard and others. Also voted, that the town treasurer (under the vote previously passed) be authorized to borrow twenty-five thousand dollars of the Mount Vernon Bank, in Boston, at five and a half per cent. interest, payable semi-annually, and that the same be appropriated under the direction of the selectmen to the liquidation of the present town debt ; " and that in September of that year the plaintiff was employed by the treasurer, on behalf of the town, to negotiate the loan.

Both parties introduced evidence of the usage in Boston and the vicinity, as to the employment of brokers to negotiate loans of this amount and character The defendants offered to prove by the president of the Bank of the Republic in Boston that that bank at about the same time with the loan in question made numerous similar loans to towns without the intervention of a broker ; but the judge excluded the evidence.

The defendants requested the court to rule that the votes gave no authority to the treasurer which he could delegate to the plaintiff, and that the latter could not recover by virtue of any contract with the treasurer ; that the power implied by the votes did not authorize the treasurer to employ a broker on the credit of the town ; that to entitle the plaintiff to recover he must satisfy the jury that it was necessary to employ a broker in order to carry out the instructions of the town, as expressed in the votes ; that it is not enough that the plaintiff rendered services beneficial to the defendants ; and that there is no promise implied by law to pay therefor, but the right to recover rests entirely upon contract.

The judge declined so to instruct the jury, and instructed them as follows :

" If the town authorized the treasurer to procure this loan, the town would be bound by any contract made by him in employing a broker to negotiate the loan, if such employment was reasonable and also according to the usual and ordinary course of business in procuring loans of the amount and character of the loan in question.

" If from the circumstances attending the introduction of the treasurer to the plaintiff, and their subsequent intercourse until the loan was consummated, the plaintiff had reasonable cause of belief that he was employed by the treasurer to act for the town, and rendered service on this belief to the town, with the knowledge of the treasurer, he may recover a reasonable compensation as upon an employment by the treasurer to act for the town, provided the treasurer knew he was rendering these services, and had reasonable cause of belief that the plaintiff was acting and assuming to be in the employment of the town.

" In the absence of any express contract for services, the law authorizes an inference of a contract between parties whose conduct is such that one serves with a reasonable cause of belief that he is employed, and the other acquiesces in the same with a reasonable cause of belief that the person rendering services relies upon his employment."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*N. B. Bryant*, for the defendants.

*D. E. Ware*, for the plaintiff.

METCALF, J. The defendants' treasurer, in September 1860, employed the plaintiff to negotiate the loan which they obtained from the Mount Vernon Bank in the latter part of the following November. But the defendants conferred on their treasurer no authority to act in their behalf in obtaining a loan, previously to their votes of November 6th and November 22d. Therefore, when he employed the plaintiff, in September, to negotiate a loan for them, he had no authority to employ him at their expense. And the question is, whether he had such authority under the votes passed by the defendants in November. It is the opinion of the court that he had not.

By the vote of November 6th the defendants instructed their treasurer to consolidate the town debt for ten years; provided the money could be obtained on certain specified terms. It is very clear, we think, that this vote did not authorize him to employ a broker, at their expense, to ascertain whether the money could be obtained on those terms.

If the treasurer had any authority to employ the plaintiff, at the defendants' expense, that authority was derived from their votes of November 22d, and the law thereto applicable. But those votes authorized him to borrow money "under the direction of the selectmen." Without their direction, therefore, he could not bind the defendants to pay for a broker's services in borrowing money for them ; and no such direction is shown to have been given. Besides ; the date of those votes, compared with the time when the defendants received the money from the bank, (the latter part of November,) leaves us in no doubt, and it was admitted at the argument, that the plaintiff's services had been rendered, and the terms of the loan agreed on, before the passing of the votes, and that the last vote was passed for the purpose of showing, more explicitly than the previous votes, the precise terms on which the treasurer was authorized to borrow the money of the Mount Vernon Bank.

As it does not appear that the defendants had any knowledge, on the 22d of November, that the treasurer had assumed to employ the plaintiff in their behalf, their votes of that date cannot be held to have ratified that employment.

We cannot sustain the first instruction given to the jury, viz. that if the defendants authorized their treasurer to procure the loan from the Mount Vernon Bank, they would be bound by any contract made by him in employing a broker to negotiate the loan, if such employment was reasonable, and also according to the usual and ordinary course of business in procuring loans of the amount and character of the loan in question. Whatever may be the law concerning usage, it is manifest that it cannot be applied to this case, which is unlike any other that has ever been the subject of litigation in this commonwealth. And it does not appear, nor has it been suggested in argument, that any evidence was introduced which tended to prove a usage for a town agent, under an appointment like that of the defendants' treasurer, to employ a broker.

Nor can we sustain the second instruction that was given to the jury. As the treasurer had no authority to employ the plaintiff, at the expense of the defendants, it is immaterial

what was the belief of either or of both of them as to such authority.

The third instruction was correct in legal doctrine, but was inapplicable to the case on trial, and did not warrant the verdict which was returned.

We incline to the opinion that the instructions, for which the defendants' counsel asked, should have been given. They seem to us to have contained, in substance, sound legal positions.

In the present state of the case, it is immaterial whether the offered testimony of the president of the Bank of the Republic was rightly or wrongly excluded. *Exceptions sustained.*